Nisha Wright (SBN: 202564)
**The Wright Law Office, P.A.**
600 West Broadway, Suite 700
San Diego, CA 92101
Telephone: (619) 393-3677
nisha@wrightlawoffice.com

Manfred P. Muecke (SBN 222893)
**Manfred APC**
4225 Executive Square
Suite 600-6051
La Jolla, CA 92037
Tel: (619) 550-4005
Fax: (619) 550-4006
mmuecke@manfredapc.com

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| William Foreman, on Behalf of Himself and All Others Similarly Situated, | |
| Plaintiff, | Case No. '25CV2147 WQHAHG |
| vs. | **CLASS ACTION COMPLAINT** |
| CVS Pharmacy Inc., a Rhode Island Corporation, | **DEMAND FOR JURY TRIAL** |
| Defendant. | |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## CLASS ACTION COMPLAINT

Plaintiff William Foreman ("Plaintiff"), by and through his attorneys, brings this action on behalf of himself and all others similarly situated against CVS Pharmacy, Inc. ("Defendant"). Plaintiff hereby alleges, on information and belief, except for information based on personal knowledge, which allegations are likely to have evidentiary support after further investigation and discovery, as follows:

## JURISDICTION AND VENUE

1. This Court has jurisdiction over this matter under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d)(2)(A), as the amount in controversy exceeds $5 million, exclusive of interests and costs; it is a class action of over 100 members; and the Plaintiff is a citizen of a state different from at least one Defendant.

2. This Court has personal jurisdiction over Defendants. Defendant has sufficient minimum contacts with the state of California and purposefully availed itself, and continues to avail itself, of the jurisdiction of this California through the privilege of conducting its business ventures in the state of California, thus rendering the exercise of jurisdiction by the Court permissible under traditional notions of fair play and substantial justice.

3. Venue is proper in this district under 28 U.S.C. § 1391(a) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this district, as Defendant does business throughout this district, and Plaintiff made

his purchase of Defendants' Maximum Strength Anti-Fungal Liquid (the "Product") in San Diego, California from a retail store in this district and his CVS antifungal product purchased was delivered to, and used, in this district.

## PARTIES

4.     Plaintiff is a natural person and a citizen of San Diego County, California. Plaintiff purchased Defendant's antifungal liquid from a local retailer for treatment of his toenail fungus. Before his purchase, Plaintiff saw and reviewed Defendant's advertising claims on the packaging, and he made his purchase of the antifungal product in reliance thereon. Plaintiff specifically relied upon representations made by Defendant. Plaintiff did not receive the promised benefits or the total value of his purchase. Plaintiff would purchase the product again if he was assured the product was not falsely advertised.

5.     Defendant CVS Pharmacy, Inc. is a Rhode Island corporation with its principal business offices located at 1 CVS Drive, Woonsocket, Rhode Island. CVS is licensed to conduct business in California. Defendant is an American multinational consumer goods corporation.

6.     Plaintiff reserves the right to amend his Complaint to add different or additional defendants, including without limitation any officer, director, employee, supplier, or distributor of Defendant who has knowingly and willfully aided, abetted, or conspired in the false and deceptive conduct alleged herein.

## **FACTUAL ALLEGATIONS**

7.     Fungal nail infections, also known as "onychomycosis," are very common. They may affect up to 14% of the general population. [1]

8.     Toenail fungus is an infection that gets in through cracks in your nail or cuts in your skin. Because toes are often warm and damp, fungus grows well there. Different kinds of fungi and sometimes yeast affect different parts of the nail. Left untreated, an infection could spread to other toenails, skin, or even your fingernails.

9.     Infected nails are usually thicker than usual and could be warped or oddly shaped. They can break easily. Nails with fungus might look yellow. Sometimes a white dot appears on the nail and then grows larger. When fungus builds up under your nail, it can loosen and even separate the nail from the bed. The fungus can also spread to the skin around your nail.

10.     With toenail fungus, your nail becomes thick and yellow and may show white spots and streaks. A type of mold called dermatophyte causes tinea unguium, the most common nail fungus. Tinea unguium most frequently targets your toenails, but it can also affect your fingernails. Onychomycosis is another name for the condition.

11.     Defendant CVS Pharmacy, Inc. manufactures, distributes, advertises, and sells the Product, which for all relevant purposes is identical. At all relevant times, Defendant has marketed the Product in a consistent and uniform manner relating to

---

[1] See https://www.cdc.gov/fungal/nail-infections.html.

ingredients, potency, and effect. Defendant sells the Product on its website and through various retail stores nationwide.

12.    The antifungal liquid treatment is advertised as a treatment for nail fungus. However, the active ingredient Tolnaftate is ineffective against nail fungus. In fact, the FDA requires a disclaimer on anti-fungal treatments containing tolnaftate that the product is not effective on nails. [2]

13.    Defendant misleadingly advertises that its Maximum Strength Anti-Fungal Liquid product is a treatment for nail fungus.  The Product name and package is clear – Anti-Fungal (with a picture of perfect toenails) – every reasonable consumer will immediately assume the Product is a nail fungus treatment.

14.    The front of the package states "For fingernails or toenails" in bold lettering with a picture next to a pristine set of toenails:

---

[2]    https://www.accessdata.fda.gov/drugsatfda_docs/omuf/OTC%20Monograph_M005-Topical%20Antifungal%20drug%20products%20for%20OTC%20Human%20Use%2012.16.2021.pdf (Over-the-Counter (OTC) Monograph M005: Topical Antifungal Drug Products for Over-the-Counter Human Use)

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18



19    15.    All of the misrepresentations at issue here were consistently made at all

20 times during the class period. Defendant made uniform misrepresentations about the

21 Product, exposing Plaintiff and all class members to the same false and misleading

22

23 advertisements.

24    16.    The CVS website states the same claims:

25

26 CVS Maximum Strength Antifungal Liquid with the only active ingredient
clinically proven to cure and prevent athlete's foot. This product treats fungus
27 of the toes & fingers on skin surrounding and under the nails. Use the brush for
easy application. Can be applied on fingernails or toenails.
28        •   Treats fungus of the toes & fingers on skin surrounding and under the

nails
- Use brush for easy application
- For fingernails or toenails

17.    The easy application brush is a nail polish brush, even though the Product does not kill nail fungus:



18.    The misrepresentation identified above, when viewed in the context of the labeling as a whole and the product at issue, has the tendency or capacity to deceive or confuse reasonable consumers into believing that the Product will treat nail fungus.

19.    Plaintiff and Class members would not have purchased the Product or would not have paid as much for the Product, had they known the truth about the mislabeled and falsely advertised Product.

20.    Plaintiff would purchase the Product again, however; at this time Plaintiff is unable to rely on the labeling of the Product because he is unsure whether those representations are truthful.

## CLASS ACTION ALLEGATIONS

21.    Class Definition: Plaintiff brings this action on behalf of himself and the following Classes pursuant to Federal Rule of Civil Procedure 23(a), (b)(2) and/or (b)(3). Specifically, the Classes are defined as:

**National Class:** All persons in the United States who purchased the Products during the fullest period of law.

In the alternative, Plaintiff brings this action on behalf of the following State class.

**California Sub-Class**: All persons in the State of California who purchased the Products during the fullest period of law.

22.    Excluded from the Classes are (a) any person who purchased the Product for resale and not for personal or household use, (b) any person who signed a release of any Defendants in exchange for consideration, (c) any officers, directors or employees, or immediate family members of the officers, directors or employees, of any Defendant or any entity in which a Defendant have a controlling interest, (d) any

legal counsel or employee of legal counsel for any Defendants, and (e) the presiding Judge in this lawsuit, as well as the Judge's staff and their immediate family members.

23.    Plaintiff reserves the right to amend the Class definitions if further investigation and discovery indicates that the Class definitions should be narrowed, expanded, or otherwise modified.

24.    **Numerosity and Ascertainability**: Plaintiff does not know the exact number of members of the putative classes. Due to Plaintiff's initial investigation, however, Plaintiff is informed and believes that the total number of Class members is at least in the tens of thousands, and that members of the Class are numerous and geographically dispersed throughout California and the United States. While the exact number and identities of the Class members are unknown at this time, such information can be ascertained through appropriate investigation and discovery, including Defendants' records, either manually or through computerized searches.

25.    **Typicality and Adequacy**: Plaintiff's claims are typical of those of the proposed Class, and Plaintiff will fairly and adequately represent and protect the interests of the proposed Class. Plaintiff does not have any interests that are antagonistic to those of the proposed Class. Plaintiff has retained counsel competent and experienced in the prosecution of this type of litigation.

26.    **Commonality**: The questions of law and fact common to the Class members, some of which are set out below, predominate over any questions affecting only individual Class members:

a. whether Defendants committed the conduct alleged herein;

b. whether Defendants' conduct constitutes the violations of laws alleged herein;

c. whether Defendants' labeling, sale and advertising set herein are unlawful, untrue, or are misleading, or reasonably likely to deceive;

d. whether the Product was misbranded under the California Health & Safety Code or similar federal law;

e. whether Defendant knew or should have known that the representations were false or misleading;

f. whether Defendant knowingly concealed or misrepresented material facts for the purpose of inducing consumers into spending money on the Product;

g. whether Defendant's representations, concealments and non-disclosures concerning the Product are likely to deceive consumers;

h. whether Defendant's representations, concealments and non-disclosures concerning the Tom's of Maine toothpaste violate California consumer laws and/or the common law;

i. whether Defendants should be permanently enjoined from making the claims at issue; and

j. whether Plaintiff and the Class are entitled to restitution and damages.

27.    **Predominance and Superiority**: Common questions, some of which are set out above, predominate over any questions affecting only individual Class members. A class action is the superior method for the fair and just adjudication of

this controversy. The expense and burden of individual suits makes it impossible and impracticable for members of the proposed Class to prosecute their claims individually and multiplies the burden on the judicial system presented by the complex legal and factual issues of this case. Individualized litigation also presents the possibility of inconsistent or contradictory judgments. In contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court on the issue of Defendants' liability. Class treatment of the liability issues will ensure that all claims and claimants are before this Court for consistent adjudication of the liability issues. A class action is superior to other available methods for the fair and efficient adjudication of this controversy for at least the following reasons:

a.      given the complexity of issues involved in this action and the expense of litigating the claims, few, if any, Class members could afford to seek legal redress individually for the wrongs that Defendants committed against them, and absent Class members have no substantial interest in individually controlling the prosecution of individual actions;

b.      when Defendant's liability has been adjudicated, claims of all Class members can be determined by the Court;

c.      this action will cause an orderly and expeditious administration of the Class claims and foster economies of time, effort and expense, and ensure uniformity of decisions; and

d.    without a class action, many Class members would continue to suffer injury, and Defendants' violations of law will continue without redress while Defendants continue to reap and retain the substantial proceeds of their wrongful conduct.

28.    **Manageability**: The trial and litigation of Plaintiff's and the proposed Class claims are manageable. Defendant has acted and refused to act on grounds generally applicable to the Class, making appropriate final injunctive relief and declaratory relief with respect to the Class as a whole.

29.    Accordingly, this Class is properly brought and should be maintained as a class action under Rule 23(b)(3) because questions of law or fact common to Class Members predominate over any questions affecting only individual members, and because a class action is superior to other available methods for fairly and efficiently adjudicating this controversy.

## FED. RULE CIV. PROC. 9(b) ALLEGATIONS

30.    Rule 9(b) of the Federal Rules of Civil Procedure provides that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." To the extent necessary, as detailed in the paragraphs above and below, Plaintiff has satisfied the requirements of Rule 9(b) by establishing the following elements with sufficient particularity.

31.    WHO: Defendant made material misrepresentations and/or omissions of fact in its labeling and marketing of the Product by representing that the Product is for the treatment of nail fungus.

32.    WHAT: Defendant's conduct here was and continues to be fraudulent because it has the effect of deceiving consumers into believing that the Product is for the treatment of nail fungus. Defendant specifically marketed the Product for treating fingernail or toenail fungus. Defendant knew or should have known that this information is material to all reasonable consumers and impacted consumers' purchasing decisions.

33.    WHEN: Defendant made material misrepresentations and/or omissions detailed herein, including that the Product is for the treatment of nail fungus continuously throughout the applicable Class period(s).

34.    WHERE: Defendant's material misrepresentations and omissions, that the Product is for nail fungus treatment, were located on the very center of the front label of the Product in bold lettering and a picture of pristine toenails, which instantly catches the eye of all reasonable consumers, including Plaintiff, at the point of sale in every transaction. The Product is sold in numerous retail stores and online stores.

35.    HOW: Defendant made written misrepresentations right on the front label of the Product that the Product was for nail fungus treatment, even though it is not. As such, Defendant's claims are false and misleading.  And as discussed in detail

CLASS ACTION COMPLAINT

throughout this Complaint, Plaintiff and Class Members read and relied on Defendant's representations and omissions before purchasing the Product.

36.     WHY: Defendant misrepresented that its Product was suitable for nail fungus treatment for the express purpose of inducing Plaintiff and Class Members to purchase the Product at a substantial price premium. As such, Defendant profited by selling the misrepresented Product to at least thousands of consumers throughout the nation.

## CLAIMS

## COUNT I

**Violation of the Unfair Competition Law ("UCL")**
**Cal. Bus. & Prof. Code § 17200, *et seq*.**
**(On behalf of the California Subclass)**

37.     Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 36 of this complaint.

38.     The UCL proscribes "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising." Cal. Bus. & Prof. Code § 17200.

39.     The unlawful prong of the UCL prohibits any unlawful business practices.

40.     Defendants are a "business" as defined under the UCL.

41.     Defendant's conduct was unlawful, in violation of the UCL, because Defendant's conduct described in this complaint constitutes a violation of California's

False Advertising Law and the California Consumers Legal Remedies Act ("CLRA") (as alleged in this Complaint) and all constitute separate and cumulative violations of the unlawful prong of the UCL.

42.    The fraudulent prong of the UCL prohibits business practices that are likely to deceive the public.

43.    Defendant's practice of not disclosing the presence of Listeria monocytogenes rendered the Products less valuable, and then misrepresenting the contamination status at the expense of its competitors, is a practice that is likely to deceive members of the public.

44.    Defendant's conduct is fraudulent in violation of the UCL because it is likely to deceive a reasonable consumer:

- Defendant promoted and sold a Product that was falsely advertised, despite knowing that customers would expect the Product to cure nail fungus;
- Defendant represented through advertising, product packaging, and other sources that the Product possessed particular qualities that were inconsistent with Defendant's actual knowledge of the Product

45.    Plaintiff and Class Members would not have purchased the Product, or would not have purchased the Products at the prices they did had the Product not been advertised as a treatment for nail fungus.

46.     Defendant was under a duty to properly advertise the Product because of its exclusive knowledge, because the misrepresentations resulted in material and unreasonable impairment to the Product.

47.     Plaintiff and Class Members were unaware of Defendant's practices. Had Defendant not marketed the Product as a treatment for nail and toenail fungus, Plaintiff and Class Members would have been aware of the true nature of the Product and would not have purchased the Product, and would have paid substantially less for the Product.

48.     The unfair prong of UCL prohibits unfair business practices that either offend an established public policy or that are immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers.

49.     Defendant repeatedly and misleadingly, inaccurately, and deceptively advertised and marketed its Product to consumers—and Defendant continues to do so. These practices offend an established public policy or are immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers.

50.     Defendant also acted in an unethical, unscrupulous, outrageous, oppressive, and substantially injurious manner with respect to Plaintiff and the Class Members by engaging in unfair and anticompetitive business practices that harmed consumer welfare. Defendant engaged in unfair business practices and acts in at least the following respects:

- Defendant promoted and sold a Product advertised for nail fungus treatment,

CLASS ACTION COMPLAINT

despite knowing the Product was not effective for that purpose;

• Defendant represented through advertising, product packaging, press releases, and other sources that the Product possessed particular qualities that were inconsistent with Defendant's actual knowledge of the Product

51.    These are practices and uniform courses of conduct that offend an established public policy or that are immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers.

52.    The harm to consumers, competition, and the general public substantially outweighs any legitimate purpose or benefit of Defendant's conduct.  There is no legitimate reason why Defendant should be allowed to sell the Product without providing its customers the opportunity to make fully informed purchases.  There is no legitimate reason why Defendant should be allowed to deceive its customers about the efficacy of its Product.

53.    Absent Defendant's unlawful, unfair and fraudulent conduct, Plaintiff and Class Members would not have purchased the Product or would have paid substantially less for it.

54.    Plaintiff and Class Members accordingly seek appropriate relief, including: (1) restitution under the UCL; and (2) such orders or judgments as may be necessary to enjoin Defendants from continuing its unfair, unlawful, and fraudulent practices. Plaintiff also respectfully seeks reasonable attorneys' fees and costs under applicable law, including under California Code of Civil Procedure Section 1021.5.

CLASS ACTION COMPLAINT

# COUNT II
## California False Advertising Law
## Cal. Bus. & Prof. Code § 17500
## (On behalf of the California Subclass)

55.    Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 36 of this complaint.

56.    Defendant violated Cal. Bus. & Prof. Code section 17500 by using false and misleading statements, and material omissions, to promote the sale of the Product and otherwise "concerning any circumstance or matter of fact connected with the proposed performance or disposition of services."

57.    The Product does not possess the level of quality or value that Defendant promised.

58.    Defendant made uniform representations and material omissions that communicated to Plaintiff and Class Members that the Product was an effective nail fungus treatment, despite knowing the Product was not.

59.    Had Plaintiff and Class Members known that the Product contained was not effective in treating nail fungus, they would not have purchased the Product in the first place.

60.    Defendant omitted the material fact that the purportedly safe Product was not an effective treatment for nail fungus. Defendant had a duty to disclose the truthful nature of the Product.

61.    Defendant knew, or in the exercise of reasonable diligence should have known, that its representations and omissions were false and misleading at the time it

made them. Defendant deliberately provided false representations and omissions to prevent customers from learning the true nature of the Product and further inducing its customers to purchase the Product.

62.    Defendant's false and misleading advertising statements deceived the general public.

63.    As a direct and proximate result of Defendant's misleading and false advertising, Plaintiff and Class Members have suffered injury-in-fact and have lost money and property.

64.    Plaintiff and Class Members reasonably relied to their detriment on Defendant's material misrepresentations and omissions regarding its Product.

65.    Plaintiff and Class Members seek to enjoin, under Bus. & Prof. Code section 17535, the violations described herein and to require Defendant to issue a recall and refund.

66.    Defendant's false advertising will continue to harm consumers unless and until it is enjoined.

67.    Plaintiff and Class Members therefore seek an order requiring Defendant to cease their false advertising and unlawful practices, provide full restitution of all monies Defendant derived from its false advertising, interest at the highest rate allowable by law, and for an award of reasonable attorney's fees and costs under applicable law, including Code of Civil Procedure section 1021.5.

## COUNT III
### Violation of the California Consumers Legal Remedies Act ("CLRA")
### Cal. Civ. Code § 1770(a)(5), *et seq.*
### (On behalf of the California Subclass)

68.    Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 36 of this complaint.

69.    Cal. Civ. Code section 1770(a)(5) of the CLRA prohibits representing that a seller's goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have.

70.    Cal. Civ. Code section 1770(a)(7) of the CLRA prohibits representing that its goods or services are of a particular standard, quality, or grade, if they are of another.

71.    Cal. Civ. Code section 1770(a)(9) of the CLRA prohibits advertising goods and services with the intent not to sell them as advertised.

72.    Defendant violated Cal. Civ. Code sections 1770(a)(5) and 1770(a)(7) of the CLRA by representing that the Product was or treatment of nail fungus when, at the point of sale, Defendant knew or should have known that the Product was ineffective at treating nail fungus.

73.    Defendant violated Cal. Civ. Code section 1770(a)(9) of the CLRA when it advertised the Product as an effective nail fungus treatment with the intent not to sell them as advertised.

74.    As a result of these violations of certain sections of the CLRA, Plaintiff incurred damages in the form of purchasing the Product at issue that lost all value as a nail fungus treatment.

75.    As a result of this violation, Plaintiff and Class Members have been deprived of the nail fungus treatment Product which Defendant represented they were purchasing. Had Plaintiff and Class Members known the true nature of the Product, Plaintiff and Class Members would have paid less for the Product, or would not have purchased the Product at all.

76.    Under Cal Civ. Code section 1781(a), any consumer who suffers damage as a result of a violation of this section may bring a class action on behalf of himself and all those similarly situated.

77.    In accordance with Cal. Civ. Code § 1780(a), Plaintiff and the Class seek injunctive and equitable relief for Defendant's CLRA violations. Concurrent with the filing of this Complaint, Plaintiff has mailed an appropriate demand letter as required under California Civil Code § 1782(a). If Defendant fails to take corrective actions within 30 days of receipt of the demand letter, Plaintiff will amend his complaint to include a request for claims for actual, punitive, and statutory damages, as appropriate.

78.    Plaintiff has no adequate remedy at law because he is currently unable to determine whether he will be able to use the Product in the future, and he is uncertain whether Defendants will correct the issue or provide other remedies. Unless the Court

CLASS ACTION COMPLAINT

enjoins further unlawful acts by Defendant, Plaintiff and Class Members face uncertainty as to which of these choices would minimize their damage. Defendant benefitted substantially from Plaintiff's purchases because Defendant received the majority of the revenue from the purchases.

79.    Therefore, Plaintiff and the Class are entitled to injunctive relief and all other relief that the court deems proper, including costs and attorney's fees, under Cal. Civ. Code section 1780.

## COUNT IV
### Negligent Misrepresentation
### (On behalf of the Nationwide Class or,
### in the alternative, the California Subclass)

80.    Plaintiff incorporates by reference preceding paragraphs 1-36.

81.    Defendant had a duty to truthfully represent the Product, which it breached.

82.    This duty was non-delegable, based on Defendant's position, holding itself out as having special knowledge and experience in this area, an industry leader in healthcare products.

83.    These promises were outside of the standard representations that other companies may make in a standard arms-length, retail context.

84.    The representations took advantage of consumer's cognitive shortcuts made at the point-of-sale and their trust in Defendant.

CLASS ACTION COMPLAINT

85.     Plaintiff reasonably and justifiably relied on these negligent misrepresentations and omissions, which served to induce and did induce, his purchase of the Product.

**COUNT V**
**Unjust Enrichment**
**(On behalf of the Nationwide Class or,**
**in the alternative, the California Subclass)**

86.     Plaintiff incorporates by reference preceding paragraphs 1-36.

87.     Plaintiff brings this cause of action on behalf of himself and on behalf of the Class.

88.     Plaintiff and Class members conferred a benefit on Defendant by purchasing the falsely advertised Product.

89.     Defendant received the monies paid by Plaintiff and Class members and thus knew of the benefit conferred upon them.

90.     Defendant accepted and retained the benefit in the amount of the profits they earned from Defendant's Product sales paid by Plaintiff and Class members.

91.     Defendant has profited from their unlawful, unfair, misleading, and deceptive practices and advertising at the expense of Plaintiff and Class members, under circumstances in which it would be unjust for Defendant to be permitted to retain the benefit.

92.     Plaintiff does not have an adequate remedy at law against Defendant.

93.    Plaintiff and Class members are entitled to restitution of the amount paid for the Product and disgorgement of the profits Defendant derived from their deceptively advertised Product sales.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, on behalf of himself and the Classes defined above, prays for relief as follows:

A.    Determination that the claims alleged herein may be maintained as a class action under Federal Rule of Civil Procedure 23, enter an order certifying the Classes defined above, and appointing Plaintiff's counsel as Class Counsel and Plaintiff as the representative of the Class;

B.    Directing that Defendant bear the costs of any notice sent to the Class(es);

C.    Declaring that Defendant must disgorge, for the benefit of the Class(es), all or part of the ill-gotten profits they received from the sale of the Product, or order Defendant to make full restitution to Plaintiff and the members of the Class(es);

D.    Awarding restitution and other appropriate equitable relief;

E.    Granting an injunction against Defendant to enjoin it from conducting their business through the unlawful, unfair and fraudulent acts or practices set forth herein;

F.    Granting an Order requiring Defendant to fully and appropriately recall the Product;

CLASS ACTION COMPLAINT

G.    Ordering a jury trial and damages according to proof;

H.    Enjoining Defendant from continuing to engage in the unlawful and unfair business acts and practices as alleged herein;

I.    Awarding attorneys' fees and litigation costs to Plaintiff and members of the Class(es);

J.    Awarding civil penalties, prejudgment interest and punitive damages as permitted by law; and

K.    Ordering such other and further relief as the Court deems just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiff demands a trial by jury of all issues triable as of right.

DATED: August 20, 2025

Respectfully Submitted,

**The Wright Law Office, P.A.**

_s/Nisha Wright_

600 West Broadway
Suite 700
San Diego, CA 92101
nisha@wrightlawoffice.com
Telephone: (619) 393-3677

**Manfred, APC**
Manfred Muecke (SBN: 222893)
4225 Executive Square
Suite 600-6051
La Jolla, CA 92101-3370
mmuecke@manfredapc.com
Phone: 619-550-4005
Fax: 619-550-4006